IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Lead Case No. 10-42055 |
| | ) | Jointly Administered |
| SHOW DEPARTMENT, INC., *et al.*, | ) | |
| | ) | Chapter 11 |
| Debtors. | ) | Hon. Pamela S. Hollis |

**COVER SHEET FOR SECOND AND FINAL APPLICATION
FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND
REIMBURSEMENT OF EXPENSES OF MADISON STREET CAPITAL
ADVISORS, LLC, DEBTORS' FINANCIAL AND OPERATIONAL ADVISOR**

**(Local Rule 5082-1(A))**

| | |
|---|---|
| Name of Applicant: | Madison Street Capital Advisors, LLC |
| Authorized to Provide Professional Services to: | Show Department, Inc., *et al.*, Debtors |
| Date of Order Authorizing Employment: | March 1, 2011 (Employment Application presented February 25, 2011) |
| Period of Which Compensation is Sought: | February 25, 2011 to June 21, 2011 |
| Amount of Fees Sought: | $164,946.07 |
| Amount of Expenses Sought: | $ 30,385.02 |

This is a(n):    Interim Application: ____    Final Application:   X  

If this is not the first application filed herein by this professional, disclose as to all prior fee applications:

| Date Filed | Period Covered | Total Requested (Fees & Expenses) | Total Allowed (Fees & Expenses) | Fees & Expenses Previously Paid |
|---|---|---|---|---|
| 05/06/2011 | 02/25/2011 – 04/25/2011 | $100,270.18 ($87,921.00 fees, $12,349.18 expenses) | $70,988.96 ($61,544.70 fees, $9,444.26 expenses) | $70,988.96 |

2156845-4

| | |
|---|---|
| Dated: May 3, 2012 | MADISON STREET CAPITAL ADVISORS, LLC |
| | By: /s/ Patrick F. Ross<br>Patrick F. Ross (# 6296461)<br>Ungaretti & Harris LLP<br>70 W. Madison Street, Suite 3500<br>Chicago, IL 60602<br>(312) 977-4400 – phone<br>(312) 977-4405 – fax<br>Email: pfross@uhlaw.com<br><br>*Counsel to Madison Street Capital Advisors, LLC, Debtors' Financial and Operational Advisor* |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Lead Case No. 10-42055 |
| | ) | Jointly Administered |
| SHOW DEPARTMENT, INC., *et al.*, | ) | |
| | ) | Chapter 11 |
| Debtors. | ) | Hon. Pamela S. Hollis |
| | ) | |
| | ) | Hearing Date: May 24, 2012 |
| | ) | Hearing Time: 10:30 a.m. |

## SECOND AND FINAL APPLICATION FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF MADISON STREET CAPITAL ADVISORS, LLC, DEBTORS' FINANCIAL AND OPERATIONAL ADVISOR

Madison Street Capital Advisors, LLC ("MSC"), the financial and operational advisor to the captioned debtors and debtors in possession (collectively, the "Debtors"), by its undersigned attorneys, pursuant to section 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 5082-1 of the Bankruptcy Court for the Northern District of Illinois (the "Local Rules"), hereby requests the entry of an order allowing and paying compensation and reimbursement of expenses to MSC on a final basis (the "Final Application").

By this Final Application, MSC requests entry of an order: (a) allowing MSC's fees in the amount of $164,946.07 as reasonable compensation for 566 hours of actual, necessary restructuring services rendered to the Debtors between April 25, 2011 and June 21, 2011 (the "Second Application Period"); (b) allowing MSC's out of pocket costs in the amount of $30,385.02 ($18,170.50, plus $12,214.50 of legal fees) as actual, necessary expenses incurred in connection with the restructuring services during the Second Application Period; (c) awarding to MSC, on a final basis, a total of $164,946.07 in compensation and $30,385.02 in reimbursement

2156845-4

of expenses incurred on behalf of the Debtors between February 25, 2011 and June 21, 2011 (the "Total Application Period"); and (d) authorizing and directing Ops 3, LLC, the transferee under the Debtors' confirmed chapter 11 plans, to pay MSC the sum of $124,342.13, which represents the difference between the total compensation and reimbursement of expenses awarded for the Total Application Period less the total amount of fees and expenses previously paid to MSC ($70,988.96). In further support of its Final Application, MSC states the following:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the matters raised in this Final Application pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (M).

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein are Section 330 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Rule 5082-1.

## BACKGROUND

5. On September 20, 2010, two of the Debtors – Show Department, Inc. and Resolution Digital Studios, LLC – filed voluntary petitions under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Court"). On December 13, 2010, the remaining two Debtors – Boreray, LLC and 2201 West Fulton LLC – also filed voluntary petitions under chapter 11 of the Bankruptcy Code in the Court.

6. Pursuant to two orders entered by this Court, the Debtors' bankruptcy cases are all being jointly administered under lead Debtor, Show Department, Inc., Case No. 10-42055. *See* Order [Dkt. 12] and Order [63].

2156845-4                                                2

7. Each of the Debtors remained in possession of their assets and operated their businesses as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

8. No creditors' committee, trustee, or examiner has been appointed in these cases.

### The Debtors' Employment of MSC

9. On December 13, 2010, the Debtors filed an application to employ Monroe Credit Advisors, LLC ("Monroe") as financial advisors and consultants to identify financing sources and advise the Debtors in connection with potential financing and restructuring alternatives. *See* Application [Dkt. 57]. As stated in the application, the Debtors' proposed terms of engagement with Monroe required the payment of a non-refundable work fee of $25,000, plus flat monthly fees of $7,500 without further review or approval by the Court, plus a success fee ranging from 2-3% subject to Court review and approval.

10. On January 25, 2011, the Debtors withdrew their application to employ Monroe.

11. Subsequently, on February 25, 2011, the Debtors filed their *Motion to Employ Madison Street Capital Advisors, LLC as Financial and Operational Advisors* [Dkt. 130] (the "Motion to Employ). The Debtors attached as an exhibit to the Motion to Employ an Engagement Letter with MSC, dated February 23, 2010 (the "Engagement Letter"). A true and correct copy of the Engagement Letter is attached as **Exhibit A** and incorporated by reference herein.

12. As discussed in the Motion to Employ and the Engagement Letter, the Debtors sought to employ MSC to provide financial and operational consulting services, including, but not limited to: reviewing and analyzing the Debtors' liquidity, cash flow, and profitability; reviewing and analyzing the Debtors' 13-week cash flow forecasts concerning working capital, collateral position, and funding needs; advising the Debtors on developing a bankruptcy plan of

reorganization and/or potential financing and general restructuring alternatives to assist the Debtors with their bankruptcy reorganizations; and interfacing with the Debtors' lenders, suppliers, and customers in support of bankruptcy and cash flow issues.

13. As consideration for those services, the Motion to Employ and the Engagement Letter provided that the Debtors would pay MSC its standard hourly rate and reimburse MSC for all reasonable and customary out of pocket expenses, which would be subject to further application and approval by the Court.

14. On March 3, 2011, the Court entered its *Order Granting Motion to Employ Madison Street Capital Advisors, LLC* [Dkt. 131], which authorized the Debtors to employ MSC as their financial and operational advisor in accordance with the terms set forth in the Motion to Employ and the Engagement Letter, including the payment of an initial, non-refundable $10,000 retainer (the "Retainer").

## MSC's First Fee Application

15. On May 6, 2011, the Debtors filed their *Motion for Interim Compensation for Madison Street Capital Advisors, LLC* [Dkt. 161] (the "First Fee Application"). By the First Fee Application, the Debtors requested allowance and authorization (a) to pay MSC $87,921.00 in connection with financial and operation consulting services rendered between February 25, 2011 and April 25, 2011 (the "First Application Period"), and (b) to reimburse MSC $12,349.18 of actual, necessary expenses incurred during the First Application Period.

16. In the First Fee Application, the Debtors stated that they "believe all of [MSC's] services were necessary and beneficial to the administration of these cases and that the cost of such services was reasonable and constitutes a valid administrative expense of these estates, and

that [MSC] should be allowed the fees and reimbursement of expenses requested." *See* First Fee Application [Dkt. 161] ¶ 8.

17. On May 26, 2011, the Court held an initial hearing on the First Fee Application and requested that MSC submit additional information in connection with its billing statements and allocate its individual time entries to individual Debtors. On June 17, 2011, the Debtors filed on behalf of MSC the additional and revised billing information. *See* Supplemental Exhibits [Dkt. 189, 190, 191, 192, 193, 194, 195, and 196].

18. On June 21, 2011, the Court entered its *Order Authorizing Interim Compensation and Reimbursement of Expenses* [Dkt. 210] (the "Interim Fee Order"). A true and correct copy of the Interim Fee Order is attached as **Exhibit B** and incorporated by reference herein. In the Interim Fee Order, the Court reduced by 30% MSC's requested interim compensation and reimbursement of expenses, allowed MSC interim compensation of $61,544.70 and reimbursement of expenses of $9,444.26, authorized MSC to apply its Retainer to the allowed compensation and reimbursement of expenses, and authorized the Debtors to pay MSC the sums of allowed compensation and reimbursement of expenses from funds of the Debtors' estates immediately upon entry of the Interim Fee Order. The Interim Fee Order also provided that the 30% reduction to MSC's fees and expenses "is without prejudice to renew the request for the disallowed fees and expenses at a future date." *See* Interim Fee Order, par. 2.

**Payments Received by MSC**

19. Pursuant to the authority granted in the Interim Fee Order, the Debtors have made payments to MSC totaling $60,988.96, and MSC has applied its $10,000 Retainer to the compensation and reimbursement of expenses awarded on an interim basis. MSC has received no

2156845-4                                    5

other payments of compensation or reimbursement of expenses in connection with the Interim Fee Order or the billing statements submitted with this Final Application.

## The Debtors' Confirmed Bankruptcy Plans

20. In early December 2011, the Court held a contested "cramdown" hearing and, on December 15, 2011, entered orders confirming each of the Debtors' chapter 11 plans of reorganization over the objection of American Chartered Bank ("ACB"). *See* Order re: Show Dept. [Dkt. 559], Order re: Boreray [Dkt. 560], Order re: RDS, LLC [Dkt. 561], and Order re: 2201 W. Fulton [Dkt. 562]. The Effective Date of each of the four plans was January 1, 2012.

21. Pursuant to the confirmed chapter 11 plans, the Debtors' assets were conveyed to newly formed Illinois limited liability company Ops 3, LLC ( "Ops 3"), which assumed all of the Debtors' obligations under the plans and continues operations at 2201 West Fulton Street, in Chicago, Illinois.

22. Further, each of the confirmed plans provided that this Court would retain jurisdiction, *inter alia*, to "fix allowances of compensation and other administrative expenses allowable under the [Bankruptcy] Code." *See, e.g.*, Show Dept. Plan [Dkt. 559-1], art. 6.01(b).

23. The Plans also stated that "Administrative Claims" would be "paid from Debtor's assets and post-confirmation operating revenue of Transferee, Ops 3 LLC. The Administration Fees will be shared by Debtor and by the Co-administered Debtors: Resolution Digital Services, L.L.C.; 2201 West Fulton, L.L.C. and Boreray, L.L.C." *See id.* art. 2.00.

## SERVICES PERFORMED BY MSC

24. Itemized and detailed descriptions of the financial and operational consulting services rendered by MSC during the First Application Period, allocated by Debtor, are attached as **Exhibit C-1** (Show Dept.), **Exhibit C-2** (Resolution Digital Studio), **Exhibit C-3** (2201 W.

2156845-4

6

Fulton), and **Exhibit C-4** (Boreray). Similarly itemized and detailed descriptions of services rendered during the Second Application Period are attached as **Exhibit D-1** (Show Dept.), **Exhibit D-2** (Resolution Digital Studio), and **Exhibit D-3** (2201 W. Fulton).

25. Additionally, itemized lists of MSC's out of pocket expenses incurred on behalf of the Debtors during the First Application Period are attached as **Exhibit E-1** (Show Dept.) and **Exhibit E-2** (Resolution Digital Studio), and similar lists from the Second Application Period are attached as **Exhibit E-3** (Show Dept.) and **Exhibit E-4** (Resolution Digital Studio).

26. As required by Local Rule 5082-1(B), MSC provides the following Narrative Summary:

27. L.R. 5082-1(B)(1)(a), (d), and (e) – A summary list is attached as **Exhibit F** that shows (i) MSC's principal activities and total compensation requested in connection with each activity, (ii) the name and position of each person who performed work on each activity, the approximate hours worked, and the total compensation sought for each person's work on each activity, and (iii) the hourly rate of each professional, the total number of hours expended by each person, and the total compensation sought for each.

28. L.R. 5082-1(B)(1)(b) – As listed under the "Task" headings on Exhibits C-1 through D-3, MSC has divided the services it rendered to the Debtors during the Total Application Period into eight separate categories: (1) Structural Analysis; (2) Financial Analysis; (3) Business Strategy; (4) Proforma Prep; (5) Draft Document Prep; (6) Company Reorganization; (7) Debt Restructure; and (8) Court Hearings. The following subparagraphs provide separate descriptions of each category, including details as to the individual tasks performed within each category:

    (a)    **Task 1 – Structural Analysis** – The services rendered under this task code primarily involved MSC's review of the Debtors' corporate structure as it existed

2156845-4                                                7

at the time these cases were filed. The Debtors entered bankruptcy as four separate corporate entities. Under their confirmed plans, the Debtors' estates' assets were transferred to a single entity, Ops 3 LLC, with three divisions. The Debtors' decision to change their operational structure was based on information uncovered by MSC's analysis of the Debtors' financial reporting systems, inter-entity relationships, revenue models, leadership structures, ownership, internal working relationships and resource sharing. As a result of MSC's investigation, analysis, and advice, the Debtors were able to expeditiously reorganize their businesses and minimize administrative expenses within bankruptcy.

In connection with these services, MSC expended approximately 42.6 hours and incurred $12,134.00 in fees during the Total Application Period.

(b) **Task 2 – Financial Analysis** – Under this task code, MSC's services primarily related to the analysis of the Debtors' existing financial statements (*e.g.*, profit and loss statements, balance sheet history of the four debtors, *etc.*). Soon after the Debtors employed MSC, its professionals reviewed the Debtors' business records, analyzed financial information, and created new financial statements (in some instances, where none previously existed). MSC also interviewed the Debtors' finance, sales, and operations managers and certain employees and independent contractors to determine the Debtors' business operational strengths and weaknesses. The financial analysis included cash utilization, accounts receivable, account payables, and taxes for each of the four Debtors. Based in part on the financial and restructuring advice of MSC, the Debtors' reorganization efforts resulted in the creation of Ops 3, a new, single entity with three divisions. MSC created Ops 3's financial reporting structure, 13-week cash flow forecast, corporate projections for the period during and post-bankruptcy, plus the overall viability analysis. MSC's services in this regard helped the Debtors demonstrate the feasibility of their chapter 11 plans, maximize the value of the Debtors' assets for their estates and creditors, and preserve dozens of jobs for the Debtors' employees.

In connection with these services, MSC expended approximately 92.1 hours and incurred $26,038.00 in fees during the Total Application Period.

(c) **Task 3 –Business Strategy** – Before they entered bankruptcy, the Debtors employed separate but related business strategies. Due to the interdependent nature of the Debtors' relationships, management, ownership structure, and cost sharing, their operational efficiency suffered. During these bankruptcy cases, MSC reviewed the Debtors' existing strategy, including revenue generation, organizational structure, human resources, facility management, equipment utilization, and growth plans. MSC's goal was to create a recovery and growth strategy for the joint entities, and then "roll out" the strategic plan, metrics, and corporate objectives to critical employees of the reorganized entity, Ops 3.

In connection with these services, MSC expended approximately 56.9 hours and incurred $16,985.40 in fees during the Total Application Period.

2156845-4                                                   8

(d) **Task 4 – Proforma Preparation** – After the Debtors decided to pursue a reorganization that involved transferring their assets to a newly created, post-bankruptcy entity, MSC was tasked with creating the profit and cash projections for that new entity, Ops 3, in order to demonstrate the feasibility of the Debtors' bankruptcy plans. This task was complicated by the Debtors' secured creditor, American Chartered Bank (ACB), filing an election pursuant to section 1111(b) of the Bankruptcy Code after the Debtors had already filed initial plans of reorganization. As a result, the Debtors were forced to substantially redraft their plans and disclosure statements to account for the new treatment of ACB's claim as wholly secured. MSC revised the proformas, profit and loss statements, and bankruptcy plans and disclosure statements to accommodate the 1111(b) election, which helped the Debtors to reach plan confirmation.

In connection with these services, MSC expended approximately 71.3 hours and incurred $19,993.00 in fees during the Total Application Period.

(e) **Task 5 – Draft Document Preparation** – MSC's primary services under this task code involved preparing the initial draft of the Debtors' plan of reorganization and disclosure statement, as well as subsequent modified and revised plans and disclosure statements. After the Debtors unsuccessfully sought to substantively consolidate their estates for purposes of the plan, MSC prepared additional plans and disclosure statements for each individual Debtor. As events unfolded in the Debtors' bankruptcy cases, including ACB's section 1111(b) election and the shifting financial structure of Ops 3, each of the Debtors' plans and disclosure statements had to be revised a total of five times. The chapter 11 plans of reorganization that were ultimately confirmed in these cases and that permitted the Debtors to successfully reorganize were mostly drafted and revised by MSC.

In connection with these services, MSC expended approximately 128.5 hours and incurred $37,725.80 in fees during the Total Application Period.

(f) **Task 6 – Company Reorganization** – As discussed above, pursuant to the Debtors' confirmed chapter 11 plans, all estate assets were transferred to a new operating entity, Ops 3. MSC was very involved in the strategizing and creation of Ops 3's business, management, and financial structure. Under this task code, MSC's services included the creation of Ops 3's four-person ownership plan, drafting the articles of incorporation, preparing the business plan, strategizing and executing the corporate and financial structure, negotiating ownership provisions, determining the staffing of Ops 3's three divisions, developing divisional operating budgets and revenue plans, and formulating shutdown plans for the Show Dept., RDS, and Boreray as operational entities.

In connection with these services, MSC expended approximately 125.2 hours and incurred $36,959.62 in fees during the Total Application Period.

(g) **Task 7 – Debt Restructuring**– MSC was tasked with creating marketing materials for the sale of the Debtors' assets to traditional and non-traditional lenders with the goal of replacing the existing secured creditor's line of credit. This task was hampered by the four Debtors' historically poor financial performance. As MSC worked to improve the Debtors' operational and financial performance, it also contacted potential new sixteen lenders. Of those sixteen lenders, eight agreed to consider lending funds to the Debtors. Four of the eight lenders indicated they would be willing to move forward with a letter of intent and due diligence after ACB agreed to a payment structure by the Debtor. The other four lenders would not proceed with a letter of intent until after plan confirmation.

In connection with these services, MSC expended approximately 39.2 hours and incurred $11,806.75 in fees during the Total Application Period.

(h) **Task 8 – Court Hearings** – Under this category, MSC professionals provided assistance, as requested by the Debtor's bankruptcy attorneys, in preparing for important court hearings, such as to consider approval of the various versions of the disclosure statement and solicit votes on the plan. Additionally, MSC evaluated the Debtor's available options and strategize and suggested alternative course of action based upon various potential outcomes of the court proceedings.

In connection with these services, MSC expended approximately 10.2 hours and incurred $3,303.50 in fees during the Total Application Period.

29. L.R. 5082-1(B)(1)(c) – The Debtor and its bankruptcy counsel declined to assist MSC in preparing its final fee application. Therefore, MSC had to retain its own attorneys to prepare this Final Application. As of April 30, 2012, MSC's attorneys provided 32 hours of legal services and incurred $66.00 of PACER-related expenses at a cost of $10,094.50 to MSC. Additionally, in May 2012, MSC conservatively estimates that its attorneys will be required to provide approximately 6 additional hours of legal services and incur approximately $350 in postage and notice-related expenses at a total anticipated cost of $2,120 to MSC. Therefore, in addition to the amounts set forth in Exhibits C, D, and E, MSC seeks reimbursement of its legal expenses in the total amount of $12,214.50.[1]

---

[1] To prepare the First Fee Application and related exhibits, MSC provided 21.5 hours of services at a cost of $5,940.00. In the preparation of this Final Application, MSC provided 29 hours of services at a cost of $8,970.00. Although MSC is entitled to seek an award of $20,850 of compensation for the 50.5 hours of

2156845-4                                    10

30. L.R. 5082-1(B)(1)(f) – As discussed above, MSC has previously sought $87,921.00 of compensation and $12,349.18 of expenses incurred during the First Application Period (total: $100,270.20), and the Court entered the Interim Fee Order allowing MSC interim compensation of $61,544.70 and reimbursement of expenses of $9,444.26 (total: $70,988.96).

31. L.R. 5082-1(B)(1)(g) – By this Final Application, MSC seeks the allowance and reimbursement of its out of pocket expenses during the Total Application Period that total $30,385.02 ($18,170.50, plus $12,214.50 of legal fees incurred in preparing this Final Application). As stated above, itemized lists of MSC's out of pocket expenses incurred on behalf of the Debtors during the First Application Period are attached as **Exhibit E-1** (Show Dept.) and **Exhibit E-2** (Resolution Digital Studio), and similar lists from the Second Application Period are attached as **Exhibit E-3** (Show Dept.) and **Exhibit E-4** (Resolution Digital Studio). MSC has divided the expenses it incurred on behalf of the Debtors during the Total Application Period into eight separate categories:

| Category | 1st Invoice Show Dept. | 1st Invoice RDS | 2nd Invoice Show Dept. | 2nd Invoice RDS | TOTAL |
|---|---|---|---|---|---|
| Airfare | 4,259.80 | 2,671.09 | 2,651.39 | 297.40 | 9,879.68 |
| Mileage | 499.65 | 1,567.40 | 298.70 | 0.00 | 2,365.75 |
| Meals | 620.59 | 204.66 | 781.15 | 0.00 | 1,606.40 |
| Taxi | 638.88 | 249.98 | 545.71 | 0.00 | 1,434.57 |
| Hotel | 901.75 | 672.45 | 1,018.99 | 0.00 | 2,593.19 |
| Parking | 72.25 | 59.75 | 112.00 | 0.00 | 244.00 |
| Miscellaneous | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Car Rental | 0.00 | 0.00 | 66.00 | 0.00 | 66.00 |
| Subtotal: | 6,973.85 | 5,425.33 | 5,473.94 | 297.4 | $18,170.52 |
|  |  |  |  | plus Legal Fees: | $12,214.50 |
|  |  |  |  | **Total:** | **$30,385.02** |

---

services it rendered in preparing its two applications for compensation, MSC has not included that amount in this Final Application in order to streamline its review and approval. However, MSC reserves the right to amend this Final Application to include that additional amount, as well as the costs incurred in retaining counsel for this Final Application, in the event of an objection to the allowance or payment of compensation to MSC on a final basis.

2156845-4                                                11

32. All of the expenses listed in Exhibits E-1 through E-4 for which MSC seeks reimbursement were actually incurred by MSC,[2] were necessary for the proper representation of the Debtors in these cases, and were specifically allocated to the Debtors' cases. From the outset of the engagement, the Debtors were made aware that MSC's restructuring professionals are based out of Detroit, Michigan (as opposed to the investment banking professionals who are located in Chicago). During the Total Application Period, the Debtors coordinated with MSC on an ongoing basis to approve the number of professionals who would work on the Debtors' matters, the frequency and duration of those professionals' on-site visits, and the airfare, car, hotel, and meal expenses that would be required in connection with those on-site visits. None of MSC's expenses represents general overhead or other expenses unrelated to this case. MSC has not added any additional charges, and the expenses reflect MSC's actual out of pocket costs.

33. L.R. 5082-1(B)(2) – By this Final Application, MSC seeks both allowance and payment of its compensation and reimbursement of expenses. As stated in the Debtors' confirmed chapter 11 plans, the sources of payment of allowed compensation and reimbursement of expenses are the Debtors' assets and the post-confirmation operating revenue of Ops 3. *See* Order re: Show Dept. [Dkt. 559], art. 2.00; Order re: Boreray [Dkt. 560], art. 2.00; Order re: RDS, LLC [Dkt. 561], art. 2.00; and Order re: 2201 W. Fulton [Dkt. 562], art. 2.00.

**DETAILED STATEMENT OF SERVICES**
(L.R. 5082-1(C))

34. The Bankruptcy Rules require "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate [to] file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses

---

[2] MSC has and will continue to incur the legal expenses discussed above in Paragraph No. 30, but has not yet paid them. MSC's legal expenses incurred in preparing this Final Application are based on its attorneys' prebill worksheets, because services are ongoing and no invoice has yet been generated.

incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a). The Local Rules permit "[t]he applicant's detailed time records [to] constitute the detailed statement required by Fed. R. Bankr. P. 2016(a)." Local R. 5082-1(C).

35. The itemized and detailed time descriptions attached as Exhibits C-1 through D-3 comply with the requirements of Bankruptcy Rule 2016(a) and Local Rule 5082-1(C), because the time detail is divided by tasks and activities that match the narrative descriptions in this Final Application, and all time entries list the date of the work, the name of the person performing the work, a brief description of the nature of the work, the time expended on the work in increments of tenth of an hour, and the fee charged for the work described in the entry.

## BASIS FOR RELIEF

36. Pursuant to Section 330 of the Bankruptcy Code and the generally applicable criteria with respect to time, nature, extent, and value of services performed, all of MSC's services are compensable and the compensation requested is fair and reasonable. All of the restructuring services performed by MSC during the Total Application Period were required for the proper representation of the Debtors in these bankruptcy cases. MSC's hourly rates are less than or comparable to rates charged by other finance and operations advisors having the same amount of experience, expertise, and standing for similar services in comparable chapter 11 cases in the Northern District of Illinois.

37. MSC has at all times acted specifically in the best interests of the Debtors and their estates. All services performed and all expenses incurred by MSC were reasonable and necessary for the preservation of the Debtors' bankruptcy estates.

38. MSC has not entered into an agreement or understanding of any kind, expressed or implied, with any entity to share in its compensation received or to be received by MSC for services rendered to the Debtors in this case.

### REQUEST FOR LIMITED NOTICE

39. As evidenced by the Certificate of Service relating to this Final Application, MSC has caused notice of the Final Application to be given by electronic CM/ECF delivery to all parties registered in the lead case. Additionally, MSC has caused to be served by first class mail on all creditors and parties in interest who are not registered with CM/ECF a detailed Notice of Hearing on this Final Application that identifies the applicant, the amounts requested, and directions how to request a copy of the Final Application from MSC's counsel without charge.

40. MSC requests that the Court excuse the notice requirement of Bankruptcy Rule 2002(a)(6) and approve the limited notice of the Final Application as sufficient and appropriate under the circumstances. Limited notice of the Final Application is sufficient in light of the expense to the Debtors' bankruptcy estates of individually serving all creditors and parties in interest with the entire Final Application and the lack of an offsetting benefit given that all parties registered with CM/ECF, including the United States Trustee and counsel to American Chartered Bank, will receive full copies. Further, the detailed Notice of Hearing provides all creditors and parties in interest with directions how to obtain a copy of this Final Application free of charge.

WHEREFORE, Madison Street Capital Advisors, LLC respectfully requests entry of an order: (a) granting the relief requested in this Final Application; (b) approving the limited notice of the Final Application as sufficient under the circumstances; (c) allowing MSC's fees in the amount of $164,946.07 as reasonable compensation for 566 hours of actual, necessary

restructuring services rendered to the Debtors between April 25, 2011 and June 21, 2011; (d) allowing MSC's out of pocket costs in the amount of $30,385.02 ($18,170.50, plus $12,214.50 of legal fees) as actual, necessary expenses incurred in connection with the restructuring services; (e) awarding to MSC, on a final basis, a total of $164,946.07 in compensation and $30,385.02 in reimbursement of expenses incurred on behalf of the Debtors between February 25, 2011 and June 21, 2011; (f) authorizing and directing Ops 3, LLC, the transferee under the Debtors' confirmed chapter 11 plans, to pay MSC the sum of $124,342.13; and (g) granting other relief as this Court deems just and proper.

                                               Respectfully submitted,

Dated: May 3, 2012                      MADISON STREET CAPITAL ADVISORS, LLC

                                               By: /s/ Patrick F. Ross
                                               Patrick F. Ross (# 6296461)
                                               Ungaretti & Harris LLP
                                               70 W. Madison Street, Suite 3500
                                               Chicago, IL 60602
                                               (312) 977-4400 – phone
                                               (312) 977-4405 – fax
                                               Email: pfross@uhlaw.com

                                               *Counsel to Madison Street Capital Advisors, LLC,*
                                               *Debtors' Financial and Operational Advisors*